IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| KIMBERLY J. EDGE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | 1:10CV493 |
|  | ) |  |
| CAROLYN W. COLVIN, | ) |  |
| Acting Commissioner of Social | ) |  |
| Security, | ) |  |
|  | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Kimberly J. Edge, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain review of a final decision of the Commissioner of Social Security denying her claims for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act.[1] The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a POD and DIB on July 25, 2006 alleging a disability onset date of December 31, 2004. (Tr. 97-101.)[2] The application was denied initially and again upon reconsideration. (Id. at 48-51, 55-63.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at 64.) At the January 27, 2009 hearing were

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the administrative record.

Plaintiff, her attorney, and a vocational expert ("VE"). (*Id.* at 19.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 9-18.) On May 25, 2010 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-5.)

## II. FACTUAL BACKGROUND

Plaintiff was 47 years old on the alleged disability onset date. (*Id.* at 23.) She finished high school and two years of college and her past relevant work was as an executive secretary, salesperson, and video store manager. (*Id.* at 23, 17).

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court

2

does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3).

3

any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(2)(A).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both her residual functional capacity[5] and her vocational abilities. If so, the claimant is not disabled.

---

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.
[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §

4

20 C.F.R. § 404.1520.

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 31, 2004 through her date last insured, also December 31, 2004. (*Id.* at 14.) The ALJ next found in step two that Plaintiff's degenerative disc disease of the cervical spine, status post cervical fusion was a severe impairment. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 15.) The ALJ reached the fourth step of the sequence, at which point she determined that Plaintiff could return to her past relevant work, and that she was not disabled from the alleged onset date (December 31, 2004) through the date last insured (also December 31, 2004.). (Tr. 17.)

## B. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on the ALJ's evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 15-17.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform a limited range of light work and could only occasionally lift/carry/push/pull 20 pounds and could frequently lift/carry/push/pull 10 pounds. (*Id.* at 15.) The ALJ concluded further that Plaintiff could sit, stand, and walk up to six hours each out of an eight hour work day. (*Id.*) She could frequently reach overhead and in other directions, climb ramps and stairs, balance, stoop, kneel and crouch. (*Id.*) She was precluded

---

404.1545(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

from crawling, working at unprotected heights, and climbing ladders, ropes, or scaffolds. (*Id.*)

In support of these conclusions, the ALJ pointed to the medical opinion of treating physician Joseph Stern, M.D., who noted that in January 2002, Plaintiff had full strength in both upper extremities and in all motor groups and good range of motion in her cervical spine with "a bit of . . . . discomfort . . . and some tenderness." (*Id.* at 16.) The ALJ noted further that there was no evidence of weakness or radiculopathy and the doctor noted that Plaintiff was doing well. (*Id.*) The ALJ pointed out that X-rays showed stable good position and alignment in the spine with some post-operative degenerative changes. (*Id.*) A 2002 MRI also showed avascular necrosis of the right hip, though there was no evidence of ongoing medical care for this condition. (*Id.*)

The ALJ then turned to the treatment notes from Eagle Primary Physicians, which also generally indicated that Plaintiff was doing well. (*Id.*) The ALJ related that Plaintiff was given a prescription for Paxil for anxiety and treatment notes indicated that this condition was well-controlled with medicine. (*Id.*) The ALJ also noted that Plaintiff reported having back and neck pain in February 2005, after the expiration of her insured status. (*Id.*)

The ALJ next recounted Plaintiff's testimony at the hearing. Plaintiff testified that she suffered muscle and nerve damage from a motor vehicle accident that occurred when she was 21 years old. (*Id.*) The injury eventually resulted in the need for surgery in 1998. (*Id.*) She continued to have pain in her neck back, arms, and shoulders. (*Id.*) She lost feeling in her right arm if she tried to pick something up. (*Id.*) She had problems driving because of difficulty turning her head. (*Id.*) She also had problems sitting. (*Id.*) Prior to December

6

2004 she was under doctor's orders to lift no more than 20 pounds. (*Id.*) She had depression and panic attacks, especially after her parents died. (*Id.*) At this point, the ALJ decided that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 16.)

Next, the ALJ concluded that the medical evidence generally indicated that Plaintiff was doing well following her 1998 surgery. (*Id.*) Although there were periods of increased stress due to family health issues, it was noted that Plaintiff's mental condition was well controlled with medication. (*Id.*) Treatment notes dated April 2006 (after the expiration of Plaintiff's insured status) indicated that the claimant denied any myalgias or arthralgias. (*Id.*) In September 2005 Plaintiff reported that she experienced pain when vacuuming, which the ALJ noted demonstrated some participation in household chores. (*Id.*)

The ALJ then noted that there were no opinions from treating or examining physicians indicating that Plaintiff was unable to work or that she was limited in performing any work related activities. (*Id.* at 17.) The ALJ also considered the opinion of the state agency physician who determined that Plaintiff was capable of performing medium work. (*Id.* at 17.) However, based on the record as a whole, including testimony at the hearing, the ALJ concluded that an RFC for a range of light work was appropriate. (*Id.*)

### C. Past Relevant Work

The ALJ found in step four that Plaintiff was capable of performing past relevant work

7

as an executive secretary and sales person as she performed them, and as generally performed. (*Id.* at 17.) She was also capable of performing her past work as a video store manager as generally performed, but not as she performed it. (*Id.*) The ALJ concluded that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.*) The ALJ thus concluded Plaintiff was not under a disability from the alleged onset date (December 31, 2004) through the date last insured (December 31, 2004). (*Id.*)

## V. ANALYSIS

The sole issue raised by Plaintiff is whether the ALJ "erred in failing to consider Plaintiff's obesity in the sequential evaluation process." (Docket Entry 10 at 3.) Plaintiff contends that at step two of the sequential evaluation process ("SEP"), the ALJ failed to determine whether Plaintiff's obesity was a severe medically determinable impairment. (*Id.* at 6.) Likewise, Plaintiff asserts that the ALJ erred further by failing to consider whether Plaintiff's RFC was limited by her obesity later in the SEP evaluation. (*Id.*). Had the ALJ scrutinized the record, Plaintiff continues, she would have found the following evidence of Plaintiff's "significant obesity" (*id.* at 5-6): (1) Plaintiff is approximately five feet, eight inches tall (Tr. 24); (2) her weight was recorded at 237 pounds on March 11, 2004 (*id.* at 240); (3) 239.5 pounds on May 27, 2004 (*id.* at 241); (4) 244 pounds on July 19, 2005 (*id.* at 244); (5) 247 pounds on August 9, 2005 (*id.* at 246); (6) 249 pounds on November 8, 2005 (*id.* at 248); and (7) 241 pounds on April 10, 2006 (*id.* at 250). The ALJ's omissions, Plaintiff contends, violated Social Security Ruling 02-1p, *Evaluation of Obesity*, which justifies reversal and remand of the ALJ's decision for further proceedings. (*Id.* at 7.) The undersigned disagrees.

8

An ALJ must consider impairments a claimant says she has. 20 C.F.R. § 404.1512(a) ("We will consider only impairment(s) you say you have . . . ."). Here, Plaintiff did not specifically declare obesity as an impairment, either in her disability application or at her hearing. Nevertheless, an ALJ must *also* consider impairments about which the ALJ receives evidence. *Id.* ("We will consider only impairment(s) . . . about which we receive evidence."). Yet, an ALJ's failure to consider an impairment about which a claimant provided evidence does not necessarily require a remand, if remand would not affect the outcome of the action. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (concluding that "remand [to consider the plaintiff's obesity] is not required here because it would not affect the outcome of the case"); *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006) (concluding that "a failure to explicitly consider the effects of obesity may be harmless error").

Such is the case here. Even if the references to weight in Plaintiff's medical records should have alerted the ALJ that obesity was (or could be) an impairment, remand would prove futile. This is because Plaintiff has failed to establish that any obesity impairment is severe, that her obesity limits her beyond the scope of the ALJ's RFC, or that the ALJ erred in any manner that could be prejudicial to her. *See Pendley v. Astrue*, Civil No. 1:11cv309, 2013 WL 819337, *2 (W.D.N.C. 2013) ("The Plaintiff bears the burden of producing substantial evidence that his conditions are severe impairments which have lasted or can been expected to last for twelve consecutive months.") (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)); *see also* 20 C.F.R. § 404.1512(c) ("You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and

9

any other information that we need to decide your claim.").

The Commissioner has spoken to the issue of obesity by way of SSR 02-1p, which requires a consideration of obesity at various points in the five step analysis. At step two, SSR 02-1p recognizes that obesity, like any other medical condition, "is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p. Notably, SSR 02-1p provides that

> [t]here is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g. "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

*Id.* Thus, any argument that Plaintiff's obesity is per se severe necessarily fails.

Moreover, Plaintiff does not specify how her obesity impaired her ability to work; she simply seeks remand. But nothing in the record, medical evidence or otherwise, indicates that Plaintiff's weight would limit her ability to work beyond those limits set forth in her RFC. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (rejecting remand where plaintiff failed to show, through objective evidence, how his obesity further impaired his ability to work); *Miller v. Astrue*, No. 2:06-000879, 2008 WL 759083, at *3 (S.D. W. Va. Mar. 19, 2008) (unpublished) (concluding that remand was improper where the plaintiff failed "to specif[y] how her 'moderate obesity' has impaired her ability to work as a 'Sandwich Maker' or 'Day Worker'"). As indicated by Plaintiff's references to the record set forth above, Plaintiff's weight appears

10

throughout her medical records. However, neither her treating physicians nor consultative examiners attributed added additional degree of limitation to their findings.[6] In light of this, the undersigned cannot conclude that the ALJ's failure to explicitly mention Plaintiff's obesity in her decision constituted error. *See Skarbek*, 390 F.3d at 504; *Ross v. Astrue*, No. 1:05CV968, 2008 WL 205213, at *5 (M.D.N.C. Jan. 23, 2008) (unpublished) (ruling that physician's reference to plaintiff's height and weight, without discussion, supported ALJ's conclusion that obesity did not limit her ability to work).

Additionally, Plaintiff's citations to the record indicate that her doctors were aware of her obesity, and the "ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition." *See Rutherford*, 399 F.3d at 553 (refusing to remand when the ALJ did not explicitly consider plaintiff's obesity); *see also Bailey v. Astrue*, 1:10-cv-00110, 2013 WL 140263, at *11 (M.D.N.C. 2013) (unpublished) ("Certainly Plaintiff's treating physicians would have further addressed the issue of obesity if they believed it to cause significant limitations for Plaintiff."). Moreover, Dr. Sankar Kumar, a reviewing physician for the state disability determination services ("DDS"), summarized Plaintiff's medical records from 1998

---

[6] Although Plaintiff does not mention this in her brief, her treatment notes sometimes describe her as "large" or obese, or mention other weight related matters like diet. (*See, e.g.*, (Tr. 193 (5/2/02 ("patient is a rather large-built woman")); (*id.* at 221 (1/19/98 "moderately obese")); (*id.* at (223 2/6/98 "moderately obese")); (*id.* at 224 (5/13/98 "moderately obese")); (*id.* at 219 (1/2/98 "Information on low-fat, low-cholesterol diet and hypertension with dietary modifications.")); (*id.* at 225 (6/5/98 "[Plaintiff] states she is still making efforts at weight loss and watching the sodium in her diet.")); (*id.* at 227 (12/22/98 "mild to moderately obese" and "[a]bdomen is obese")); (*id.* at 228 (4/15/99 "slightly obese")); (*id.* at 229 (7/20/99 ("obese")); (*id.* at 230 (2/14/00 ("She has been burdened with recent weight gain.")). These references are remote in time from Plaintiff's alleged disability onset date of December 31, 2004, and therefore do not cast much light on the period of time that is relevant in this case, which is perhaps why Plaintiff has left these references unemphasized. In any event, even assuming these descriptions can be construed as a diagnosis of obesity, and even if they fell into the relevant time period, Plaintiff has still failed to establish that her obesity is severe or that it limits her ability to work beyond those limitations set forth by the ALJ in her RFC.

11

through 2004 and noted her weight ranged from 224 to 246 pounds. (Tr. 289.) Dr. Kumar concluded on August 30, 2006 that Plaintiff's RFC permitted her to do exertionally medium work (*id.* at 283), which was an even less restrictive assessment than the ALJ's ultimate conclusion that Plaintiff's RFC should be limited to light work (*id.* at 15). Dr. Kumar's assessment was affirmed by a second DDS physician, Dr. E. Woods, upon a review of the record. (*Id.* at 305.) Any failure on the part of the ALJ to expressly address and discount an impairment which reviewing experts found to be consistent with considerable working capacities is at most harmless. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of the perfect opinion unless there is reason to believe that remand might lead to a different result.").

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket Entry 9) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be **GRANTED** and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
April 15, 2013

12